1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. HANEY, | CASE NO.    1:09-cv-01848-LJO-MJS (PC) |
| Plaintiff, | COMPLAINT DISMISSED WITH LEAVE TO AMEND |
| v. | (ECF No. 1) |
| WARDEN, KEN CLARK, et al., | |
| Defendants. | AMENDED COMPLAINT DUE WITHIN THIRTY DAYS |
| _____/ | |

## SCREENING ORDER

**I.      PROCEDURAL HISTORY**

Plaintiff Thomas A. Haney ("Plaintiff") is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at Pleasant Valley State Prison ("PVSP") in Coalinga, California, and is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on October 21, 2009. (ECF No. 1.)  No other parties have appeared.  Plaintiff's Complaint is now before this Court for screening.

1

For the reasons set forth below, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted.

## II.   SCREENING REQUIREMENTS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).   While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

## III.   SUMMARY OF COMPLAINT

Plaintiff brings this action for retaliation and violation of his due process rights.  He

sues two distinct groups of Defendants at two different facilities.

First, Plaintiff names as Defendants the following individuals who were employed at Corcoran State Prison ("CSP") at the time of the incident for which he seeks to sue them: Ken Clark, Warden; F. Fields, Lieutenant Commander; S. Ramirez, Visiting Lieutenant; R. Roberson, Visiting Lieutenant; M. Crouch, Visiting Sergeant; F. Ramirez, Visiting Staff C/O; R. Brannum, Visiting Staff C/O; Twitty, ISU Sergeant; A. R. Shiloh, ISU Sergeant #2; M. Padilla, ISU Staff C/O; A. Bernal, ISU Staff C/O; Gonzalez, ISU Staff C/O; W. S. Wadkins, Yard Lieutenant; D. James, Yard Lieutenant; Gonzalez, Yard Sergeant; S. Ballesteos, Yard Staff C/O; C. Lane, Yard Staff C/O; L. Webb, CCI Counselor; L. Smart, CCII Counselor; E. McCant, CCII Counselor; Benninghoff, Attorney; and Adam Nelson, District Attorney.

Plaintiff also sues the following individuals who were employees at Pleasant Valley State Prison (PVSP) at the time of the alleged wrongs:  J. Moss, Regional Director; J. Yates, Warden; J. M. Mattingly, Chief Deputy Warden (A); R. Hansen, Chief Deputy Warden (A); D. Nelson, Visiting Lieutenant; Webster, Visiting Lieutenant; W. K. Myers, Visiting Lieutenant; V. Carr, Visiting Sergeant; C. Barajas, Visiting Staff C/O; Timm, Visiting Staff C/O; J. Lopez, ISU Sergeant; R. Milam, ISU Staff C/O; and D. Thompson, ISU Staff C/O.

      1.  Count One (CSP)

Plaintiff alleges as follows:

On June 6, 2004, Defendant Ballesteos was working in the visiting room at CSP. She repeatedly terminated Plaintiff's visits.  This lead to many verbal confrontations between them.  Plaintiff filed a personal complaint.  Defendant Ballesteos advised other

3

prison officials of Plaintiff's complaints and litigation.   As a result other Defendants rataliated against Plaintiff and his family as discussed below.

On July 12, 2005, Plaintiff's cell was searched by Defendants Bernal, Gonzalez, and Lane.  A red balloon of heroin was found.  Plaintiff claimed that it belonged to his cellmate.

On October 15, 2005, Plaintiff's visit with his family was terminated by Defendant Brannum who claimed to have seen Plaintiff's wife and child hand Plaintiff something which Plaintiff then hid.[1]  Brannum handcuffed Plaintiff and took him to contraband watch where he stayed until October 18.   Contraband was never found, but Plaintiff was placed in administrative segregation ("ad-seg") anyway.

On December 22, 2005, Plaintiff received a false CDC 115 for possession.  The same prison officers were involved as in the cell search in July.

On December 19, 2005, a correctional counselor filed a 1030 form[2] and claimed he didn't remember who the confidential informant was.  At the hearing regarding the Form 1030, the hearing officer, Defendant James, found Plaintiff guilty on all charges.  Plaintiff filed complaints on Defendant Ramirez for coming to ad-seg for her "personnell" complaint and on Defendant Brannum for lying about Plaintiff and his family.

At some point unspecified by Plaintiff, Defendant Ramirez told Plaintiff that he would remove Plaintiff's wife and children from visiting forever if he did not stop filing reports on

---

[1]  Plaintiff goes into detail as to what then happened to his wife and child.  Apparently his wife was the recipient of subsequent adverse treatment, criminal charges, a court case, etc. Such facts may justify claims by Plaintiff's wife, but those claims would be personal to her and could not be brought by Plaintiff.  Thus, the facts relating to such claims do not appear pertinent to Plaintiff's Section 1983 action.

[2]  Form 1030 is provided to an inmate when confidential sources are used in the validation process of an investigation to protect the confidentiality of the source. Cal. Code Regs. tit 15, § 3378(c)(6)(C).

1    officers.

2        2.  <u>Counts Two and Three  (PVSP)</u>

3
4        On June 2, 2007, Plaintiff's wife attempted to visit him.  She was turned away by

5    Defendant Nelson who informed her that her visitation rights had been disapproved by

6    CSP.  Plaintiff's wife filed an appeal.  Defendant Mattingly responded by noting that

7    Plaintiff's wife was a disapproved visitor.  He directed all questions to Defendant Nelson.

8    More appeals were filed on July 11, 2007.  The response said that more time was needed

9    to investigate.  Another appeal was filed on July 4; no answer was received.  An appeal

10   was filed on September 11, 2007.  Finally, on December 22, 2007, Plaintiff's wife was

11   approved for visitation.
12
13       On March 23, 2008, Plaintiff asked Defendant Barajas if he could have a picture

14   taken of Plaintiff and his wife kissing.  Barajas agreed but then took the photograph as

15   contraband. Plaintiff filed a complaint.

16       On March 28, 2008, Plaintiff was called to the podium in the visitor's room for

17   allegedly spanking his wife.  His visits were then terminated until April 28, 2008.  Plaintiff

18   appealed.  His appeal was screened out.
19
20       On July 4, 2008, one of Plaintiff's children thought she lost something in the visitor's

21   restroom and asked Defendant Timms if any money had been turned in.  Defendant

22   Timms had Plaintiff's visits terminated for sixty days.  Plaintiff filed another complaint which

23   was screened out.

24       On October 21, 2008, Plaintiff was placed in ad-seg to investigate a conspiracy to

25   introduce drugs into the prison allegation.  Plaintiff filed a CDC 115 for all of the

26   documentation referred to in the report.  It was screened out on June 9, 2009.
27
                                         5

1    Plaintiff seeks a trial by jury, a restraining order to stop the harassment of himself

2    and his family, $100,000 from each Defendant, and court costs.

3    **IV.    ANALYSIS**

4    The Civil Rights Act under which this action was filed provides:

5
6            Every person who, under color of [state law] . . . subjects, or
             causes to be subjected, any citizen of the United States . . . to
7            the deprivation of any rights, privileges, or immunities secured
             by the Constitution . . . shall be liable to the party injured in an
8            action at law, suit in equity, or other proper proceeding for
             redress.
9
10   42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal

11   Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir.

12   1997) (internal quotations omitted).

13       **A.    Count One – Retaliation**

14   Plaintiff states that he was retaliated against by Defendants at CSP for exercising

15   his constitutional rights.

16
17   "Within the prison context, a viable claim of First Amendment retaliation entails five

18   basic elements:  (1) An assertion that a state actor took some adverse action against an

19   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled

20   the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

21
22   advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th

23   Cir. 2005).

24   Plaintiff 's pleading is insufficient to state a claim of retaliation by prison officials at

25   CSP.

26   Plaintiff states that after he filed a personal complaint about Defendant Ballesteos's

27

6

conduct, she told other officers about Plaintiff's litigation-related activities and citizen's complaints. Subsequently, Plaintiff's cell was searched and drugs were found; Plaintiff was accused of having received contraband from his family, was put on contraband watch, and eventually placed in ad-seg. Plaintiff was falsely accused of possession and found guilty of the charges after a hearing. At some point, Defendant Ramirez threatened to remove Plaintiff's family forever if he did not stop filing reports on officers.

Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Plaintiff's allegations of cell search, false contraband accusations leading to ad-seg placement, false possession charges, etc are adverse actions. Thus, Plaintiff has satisfied the first and third prongs of the retaliation standard.

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300). Plaintiff does not allege that his speech was chilled, but the adverse actions he suffered would chill a person of ordinary firmness. Thus, Plaintiff has satisfied the fourth prong.

The second element of a prisoner retaliation claim focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Morgan, 874 F.2d at 1314). Although it can be difficult to establish

7

1
2
3
4
5
6
7
8
9
10
11
12

the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"). Plaintiff alleges that Defendant Ballestreos's telling other prison officials of Plaintiff's litigation activity in June of 2004 initiated retaliatory conduct beginning in July 2005. This lengthy interval of time between the alleged motive to retaliate and the alleged retaliatory action belies any logical connection between the two. The pleading lacks facts which could satisfy the second prong of retaliation claim.

13
14
15
16
17
18
19
20
21
22
23
24
25

With respect to the fifth prong, a prisoner must affirmatively allege that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d at 532. This is not a high burden to reach. See id. (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry). Plaintiff makes no statements regarding penological goals or whether the allegedly adverse acts were related to such goals. However, it appears to the Court that the adverse actions were in response to threats perceived by the officials. Plaintiff's cell was searched; drugs were found. Plaintiff was accused of having contraband; he was sent to ad-seg. Plaintiff was accused of possession and found guilty. Plaintiff's allegations suggest that the complained-of conduct did advance the legitimate penological goal of keeping drugs out of the prison.

26
27

**B.    Counts Two & Three - Due Process**

Plaintiff appears to be alleging that he was denied due process when his wife was

declared a disapproved visitor and when his visitation privileges were suspended.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Courts have considered constitutional claims pertaining to a prisoner's denial of visitation under both the Eighth and Fourteenth Amendments. See generally Ky. Dep't of Corr. v. Thompson, 490 U .S. 454 (1989) (considering the denial of visitation rights under the Due Process Clause of the Fourteenth Amendment); Keenan v. Hall, 83 F.3d 1083 (9th Cir. 1996) (considering the denial of visitation rights under the Eight Amendment). "[T]here is no constitutional right of 'access to a particular visitor.'" Keenan, 83 F.3d at 1092 (quoting Ky. Dep't of Corr., 490 U.S. at 460-61).

Plaintiff states that his wife was denied visitation privileges and that his visitation privileges were suspended multiple times. However, as noted, visitation privileges are not constitutionally guaranteed. Plaintiff has not identified any state law/prison regulation which creates such a liberty interest. As pleaded, Plaintiff fails to state a due process

violation.  The Court will give Plaintiff leave to amend this claim.  If he chooses to do so, Plaintiff must demonstrate that a liberty interest in visitation privileges exists and what law or regulation created it.

### C.   Other Possible Claims

Plaintiff may be trying to allege other constitutional violations, but he has failed to articulate them sufficiently for the Court to analyze them.  The Court offers the following legal standards for guidance upon amendment.

### 1.   Conspiracy

Plaintiff has checked a box on his complaint indicating that he is trying to state a conspiracy claim.  The Court is unable to determine what allegations state a conspiracy claim.  Upon amendment of his complaint, if Plaintiff would like to state a conspiracy claim, he will have to meet the following legal standard.

To state a viable conspiracy claim pursuant to Section 1983, a plaintiff must "state specific facts to support the existence of the claimed conspiracy."  Burns v. Cnty. of King, 883 F.2d 819, 821 (9th Cir. 1989) (citation omitted).  The Ninth Circuit has held that "each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989) (citation omitted)).  Plaintiff must therefore show "an agreement or 'meeting of the minds' to violate constitutional rights."  Id. However, "[s]uch an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants."  Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999) (citation omitted).  Accordingly, "a

10

showing that the alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement" may indicate the existence of a conspiracy. Id. (citation and internal quotation marks omitted).

Section 1985 proscribes conspiracies to interfere with an individual's civil rights. Section 1985(2) proscribes conspiracies for the purpose of impeding the due course of justice in any state with the intent to deny equal protection of the laws, and Section 1985(3) proscribes conspiracies to deny equal protection of the law or equal privileges and immunities. Coverdell v. Dep't. of Soc. and Health Svcs., State of Washington, 834 F.2d 758, 767 (9th Cir. 1987). An allegation of racial or class-based discrimination is required to state a claim for relief under either Section 1985(2) or Section 1985(3). Bretz v. Kelman, 773 F.2d 1026, 1028-1030 (9th Cir. 1985).

To state a cause of action under Section 1985(3), Plaintiff must allege: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillispie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under Section 1985 must allege specific facts to support the allegation that defendants conspired together. Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state a claim

11

under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Anna, 936 F.2d 1027, 1039 (9th Cir. 1991).

### 2.   Administrative Segregation

It appears that Plaintiff may be trying to make a due process argument for his placement in ad-seg twice.  As to the first time he was placed in ad-seg, Plaintiff states that he was placed there even though no contraband was found.  As to the second time, Plaintiff implies that the hearing was improper.  However, he does not give any detail as to what was improper in the hearing, the notice or anything else that might have precipitated his ad-seg placement.

### a.   Substantive Due Process

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian, 491 F.3d 1086 (9th Cir. 2007); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).  In resolving a Fourteenth Amendment substantive due process claim, the Court must balance "'several factors focusing on the reasonableness of the officers' actions given the circumstances.'"  White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990) (quoting Smith v. City of Fontana, 818 F.2d 1411, 1417 (9th Cir. 1987), overruled on other

grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999).

b. Procedural Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for a due process deprivation, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.

The Due Process Clause alone creates no liberty interest in remaining in the general prison population.  Hewitt v. Helms, 459 U.S. 460, 468 (1983) overruled on other grounds by Sandin, 515 U.S. 472.  Prisoners may be housed in administrative segregation to protect them from other inmates, to protect other inmates from the segregated prisoner, or pending investigation of disciplinary charges, transfer, or re-classification.  Id.  The allegation that a plaintiff was placed in administrative segregation does not in and of itself state a claim for relief based on deprivation of due process.  May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  The Ninth Circuit has explicitly found that "administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence."  Toussaint v. McCarthy, 801 F.2d

13

1080, 1091-92 (9th Cir. 1986), abrogated on other grounds by Sandin, 515 U.S. 472.

3.    Property

Plaintiff allegation regarding confiscation of a photograph could also imply a violation of his due process rights.  The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff, 418 U.S. at 556, and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, Hudson v. Palmer, 468 U.S. 517, 532 n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available," Hudson, 468 U.S. at  533.

California Law provides an adequate post-deprivation remedy for any property deprivations.  See Cal. Gov't Code §§ 895; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).  California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006).  Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 123 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public employee, a plaintiff must allege compliance

14

with the Tort Claims Act.  State v. Superior Court, 90 P.3d at 123; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff should only pursue this claim if he can demonstrate compliance with the California Tort Claims Act.

4.   Cell Search

Plaintiff implies that his cell was searched improperly.  The Fourth Amendment protects prisoners from unreasonable searches, including the invasion of bodily privacy. Bull v. City and County of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010); Michenfelder v. Sumner, 860 F.2d 328, 332-33 (9th Cir. 1988).  The Fourth Amendment prohibits unreasonable searches, and reasonableness is determined by the context, which requires a balancing of the need for the particular search against the invasion of personal rights that search entails.   Bell v. Wolfish, 441 U.S. 520, 558-59 (1979) (quotations omitted); Bull, 595 F.3d at 971-72; Nunez v. Duncan, 591 F.3d 1217, 1227 (9th Cir. 2010); Michenfelder, 860 F.2d at 332.  The scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted must be considered.  Bell, 441 U.S. at 559 (quotations omitted); Bull, 595 F.3d at 972; Nunez, 591 F.3d at 1227; Michenfelder, 860 F.2d at 332.

In evaluating whether a prison's policy or practice is reasonable under the Fourth Amendment, courts must also look to the test articulated in Turner v. Safley, 482 U.S. 78, 89-91 (1987).  Under Turner as applied to Fourth Amendment body search claim, any infringement on a prisoner's Fourth Amendment rights must be reasonably related to legitimate penological interests, which requires consideration of:  (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental

15

interest put forward to justify it; (2) the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) the absence of ready alternatives. <u>Bull</u>, 595 F.3d at 973; <u>Nunez</u>, 591 F.3d at 1227; <u>Michenfelder</u>, 860 F.2d at 331.

The Court is mindful that it is evaluating Plaintiff's Fourth Amendment claim at the pleading stage. Nevertheless, Plaintiff's allegations must be sufficient to state a facially plausible Fourth Amendment claim and any alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." <u>Bull</u>, 595 F.3d at 972 (quoting <u>Bell</u>, 441 U.S. at 547). "[T]he problems that arise in the day-to-day operation of a correctional facility are not susceptible of easy solutions," and prison officials must be accorded "'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" <u>Id.</u> An inmate has no "reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures." <u>Hudson v. Palmer</u>, 468 U.S. at 536.

Because there is no Fourth Amendment applicability to a prison cell, Plaintiff would be well-served to devote his attention to his other claims.

**D.    Personal Participation and Supervisory Liability**

Plaintiff appears to be arguing that most named Defendants, particularly the wardens and other supervisory officials who apparently were not present at the time of and did not participate in the complained of conduct, are liable for the conduct of their subordinates. Moreover, many of the named Defendants are not mentioned at all in the

factual allegations section of Plaintiff's Complaint and no action is attributed to them.

Under Section 1983, Plaintiff must demonstrate that <u>each</u> named Defendant personally participated in the deprivation of his rights. <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. <u>Iqbal</u>, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." <u>Id.</u> at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. <u>Id.</u> at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. <u>Jeffers v. Gomez</u>, 267 F.3d 895, 915 (9th Cir. 2001); <u>Wesley v. Davis</u>, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004). In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. <u>Jeffers</u>, 267 F.3d at 915; <u>Wesley</u>, 333 F.Supp.2d at 892. The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights. <u>Wesley</u>, 333 F.Supp.2d at 892 (internal quotations omitted). However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement. <u>Id.</u> (internal quotations omitted).

17

Supervisor liability under Section 1983 is a form of direct liability.  Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002).  Under direct liability, Plaintiff must show that Defendant breached a duty to him which was the proximate cause of his injury. Id.  "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"  Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)).

Plaintiff has not alleged facts demonstrating that all of the named Defendants personally acted to violate his rights.  Plaintiff needs to specifically link each Defendant to a violation of his rights.  Plaintiff shall be given the opportunity to file an amended complaint curing the deficiencies in this respect.

## V.   CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint fails to state any Section 1983 claims upon which relief may be granted.  The Court will provide Plaintiff time to file an amended complaint to address the potentially correctable deficiencies noted above.  See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  In his Amended Complaint, Plaintiff must demonstrate that the alleged incident or incidents resulted in a deprivation of his constitutional rights.  Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  Plaintiff must also demonstrate that each defendant personally participated in the deprivation of his rights.  Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new defendants or claims.  Plaintiff should focus the

18

amended complaint on claims and defendants relating solely to issues arising out of the incidents discussed herein.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiff's complaint is dismissed for failure to state a claim, with leave to file an amended complaint within thirty (30) days from the date of service of this order;

2.      Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:09-cv-1848-LJO-MJS (PC); and

3.      If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:    March 28, 2011            /s/ Michael J. Seng
                                    UNITED STATES MAGISTRATE JUDGE